MADDOX, Justice.
This is a breach of contract case. Both parties claimed that the other breached the contract. The jury returned a verdict in favor of the plaintiff both on his claim and on the defendant’s counterclaim. The issue is whether the trial judge erred in refusing to grant the defendant a new trial.
In December 1985, the plaintiff, Mike Henderson, agreed to construct an addition onto defendant Johnny Smothers’s home. Their agreement was partly oral and partly written. The written part consisted of a “spec” sheet on which Henderson had outlined the materials to be used in constructing the addition, together with the total cash price for the project, $36,000.
The parties dispute the agreed method of payment: Henderson stated that Smothers was to pay him in three equal installments; Smothers stated that he was to pay Henderson in two equal installments, the last installment to be paid when Henderson *658 had finished the job to Smothers’s satisfaction. They also dispute the time set for completion of the contract: Henderson stated that Smothers told him that he was in no hurry to have the job finished; Smothers stated that Henderson said he would have the job done in six to eight weeks, barring any unforeseen circumstances.
Shortly after Christmas in 1985, Henderson made a further agreement to construct an upstairs bedroom for Smothers. Henderson estimated that the bedroom would cost Smothers an additional $4,000 to $5,000, making the total contract price around $40,000 or $41,000.
Sometime in April 1986, Henderson discontinued working on Smothers’s home. Before Henderson discontinued his work, however, Smothers provided Henderson with a “punch list” outlining defects that Smothers wanted Henderson to correct. The parties dispute whether the corrections on this punch list were ever completed by Henderson.
Payment was not effected according to either party’s expectations. Sometime in December, after Henderson commenced work on the addition, Smothers paid Henderson $3,000. Several weeks later Smothers paid Henderson $6,000. After Henderson “blacked in” the addition, Smothers paid him either $10,000 or $11,-000. Later, Smothers paid him $10,000 more. Smothers testified that he paid Henderson an additional installment of $3,000; Henderson did not acknowledge receipt of this additional payment. According to Smothers, his payments totalled $33,-000; according to Henderson, $29,000.
Smothers testified that Henderson said he could not finish the job until he obtained money with which to purchase more materials. However, Henderson testified that it was after he “finished” the job that he asked Smothers for the rest of the money. He said he told Smothers that he was overdue in payments to one of his suppliers, Trull Building Supply. Henderson testified that Smothers refused to pay him because he was unsatisfied with his work and because he did not think that Henderson had completed all that he had agreed to accomplish. Henderson testified that Smothers promised payment when Henderson had done three things: (1) installed shower doors; (2) built a pump house; and (3) constructed a stair rail. Henderson testified that he had no responsibility under the contract to do any of these.
Communication soon broke down between the parties. Smothers asked Henderson for receipts on his prior payments to Henderson. Smothers testified that Henderson promised to bring him both the receipts and a copy of the “spec” sheet. (Henderson had never given Smothers a copy, even from the inception of the contract.) Henderson, in fact, did not bring Smothers either the receipts or a copy of the contract. Smothers then contacted Henderson, who stated that he had already turned the matter over to his lawyer.
Trull Building Supply sued Smothers to recover for supplies charged by Henderson. Another supplier, Blue Star, sued Henderson to recover for supplies charged by Henderson, and Henderson impleaded Smothers as a third-party defendant in that action.
Smothers hired Wymon Reeves sometime in August or September 1986 to “finish” the addition to his home. Reeves estimated that the job price would approximate $9,800. Reeves testified that his estimate did not include some items that it would be impractical to correct. At the date of trial, Smothers had paid Reeves approximately $10,000.
Henderson instituted this suit for breach of contract. He claimed damages in the amount of $11,400 (representing the amount Henderson contended was due under the contract). Smothers counterclaimed for breach of contract. He alleged that Henderson failed to complete the contract and alleged poor workmanship as to that part of the contract that Henderson did complete. He claimed damages in the amount of $15,000.
At trial, Henderson testified that he completed the work and did so in a workmanlike manner. Smothers contended the opposite. In support of his counterclaim, *659 Smothers introduced into evidence numerous pictures of his home, which allegedly showed Henderson’s poor workmanship and unfinished work. Smothers testified that he took the pictures around August 1986, approximately four months after Henderson discontinued work on his home. (Smothers testified that no additional work had been done on his home at the time the pictures were taken.) When Smothers’s attorney questioned Henderson concerning each picture, Henderson, for the most part, either testified that he did not recognize the picture as being a part of Smothers’s home, denied that the picture accurately portrayed his work as of the date he left Smothers’s home, or denied that the picture showed any defective workmanship or any incompletion. Henderson testified that at the time Smothers refused payment, he did not mention any of the “defects” shown in the pictures.
As evidenced by the foregoing, the facts are largely in dispute. Henderson alleged that he completed the contract and that payment is due. Smothers alleged that Henderson failed to complete the contract and that no money is due; in fact, Smothers alleged that Henderson owes him money for amounts expended as a result of Henderson’s failure to complete the contract. The jury returned a verdict in favor of Henderson on both claims. The trial judge overruled Smothers’s motion for a new trial.
“Where the evidence is conflicting, this court will not substitute its judgment for that of the trier of facts.” Shiver v. Waites, 408 So.2d 502, 504 (Ala.1981). The jury resolved the conflicting evidence in favor of Henderson.
“Jury verdicts are presumed to be correct in Alabama. This presumption of correctness is further strengthened by the trial court’s denial of a motion for new trial. Chapman v. Canoles, 360 So.2d 319 (Ala.1978). The appellate court ‘must review the tendencies of the evidence most favorable to the prevailing party and indulge such inferences as the jury was free to draw.’ Cooper v. Peturis, 384 So.2d 1087, 1088 (Ala.1980). Therefore, a judgment based on a jury verdict will not be reversed unless it is plainly and palpably wrong. Osborne v. Cobb, 410 So.2d 396 (Ala.1982).”
Ashbee v. Brock, 510 So.2d 214, 215 (Ala.1987).
We have examined the evidence as presented by both parties. We are unable to conclude that the jury verdict was against the great weight of the evidence or was plainly and palpably wrong. The judgment is, therefore, due to be, and it is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, BEATTY and HOUSTON, JJ., concur.