Donald R. Kahn and Kahn Properties, Inc. (both hereinafter sometimes referred to as "Kahn"), appeal from a judgment based on a jury verdict awarding damages to Evan M. Terry on a breach of contract claim. We affirm.
On May 8, 1984, Terry and Kahn Properties, Inc., entered into a design contract. Under the terms of the contract, Terry was to prepare designs for the development of a shopping center located in the Southside area of Birmingham; that development included the renovation of existing stores and shops in the area and the design and construction of a parking deck. The contract called for an architect's fee of six percent of the construction cost. According to the testimony of Donald R. Kahn, the overall budget for the project was $2,000,000, which included $900,000 for the parking deck. Under the contract, Terry was to provide architectural services during the following phases: the schematic design phase; the design development phase; the construction document development phase; the bidding and negotiation phase; and the construction phase.
Terry and Donald Kahn orally agreed that the design and development of the parking deck would be included in the first phase of the project. They also orally agreed that the parking deck was to consist of 150 parking spaces, at a cost of $6,000 each. On July 13, 1984, Terry mailed design plans and specifications for the parking deck to four general contractors, previously selected by Kahn and Terry, to allow them to bid on the contract. Among the items included in the plans was a "pan and joist" system used to form concrete slabs on the floor of the parking deck. After the bid packages were mailed, several of the contractors contacted Terry and suggested that perhaps a "post-tension" system of concrete slab formation, as opposed to the "pan and joist" system, would be better suited for use in the construction of the parking deck. Terry then issued an addendum to the documents requesting that the contractors submit bids using both systems of concrete formation.
On August 7, 1984, bids were received from the four general contractors, with Cooper and Sayers Construction Company being the lowest bidder, at $1,394,000. Terry negotiated with Cooper and Sayers to lower its bid to conform with the overall budget of $1.2 million for the first phase of the project. Cooper and Sayers lowered its bid to $1,230,000. On August 28, 1984, Terry prepared a construction contract between Kahn and Cooper and Sayers for $1,230,074, but Kahn refused to sign the contract. Kahn terminated Terry's employment on September 14, 1984.
Terry filed a breach of contract action against Donald R. Kahn and Kahn Properties, Inc., seeking compensation for services rendered under the contract. Kahn filed a motion to dismiss, which was denied in August 1985. In October 1985, Kahn filed an answer and counterclaim, alleging, inter alia, that Terry had not performed any services *Page 392 
for which compensation was owed, and that the plans and specifications submitted by Terry did not meet the standards specified in the contract. Terry filed a motion for a summary judgment, which was denied, and the case was tried. The jury awarded Terry $95,693.31 and found against Kahn on the counterclaim. Kahn's post-judgment motions were denied on June 26, 1992, and Kahn appealed on August 4, 1992.
On appeal, Donald Kahn and Kahn Properties argue that the trial court erred in denying their motion for a directed verdict and for a judgment notwithstanding the verdict, or in the alternative, a new trial, on the grounds that, as a matter of law, Terry was not entitled to compensation because, the appellants claim, he had breached the contract by (a) failing to furnish plans for the parking deck within the agreed fixed construction cost limitations, and (b) delegating design responsibility under the contract to a subcontractor. We disagree.
If the parties have a written agreement, their rights and duties are governed by that agreement. More specifically, "if there is an express contract for architectural services, an architect's duties are determined by the contract for the architect's employment." Getzschman v. Miller Chemical Co.,232 Neb. 885, 443 N.W.2d 260, 270 (1989).
Article 1 of the contract between Kahn and Terry states that Terry was to provide architectural services during the following phases: the schematic design phase; the design development phase; the construction document development phase; the bidding and negotiation phase; and the construction phase. It also states that the architect's basic services will include "normal structural, mechanical and electrical services and any other services included in Article 15 as part of Basic Services."
Article 3 of the contract governs the construction cost; it provides, in pertinent part:
 "No fixed limit of Construction Cost shall be established as a condition of this Agreement by the furnishing, proposal or establishment of a Project budget under Subparagraph 1.1.2 or Paragraph 2.2 or otherwise, unless such fixed limit has been agreed upon in writing and signed by the parties hereto. If such a fixed limit has been established, the Architect shall be permitted to include contingencies for design, bidding and price escalation, to determine what materials, equipment, component systems and types of construction are to be included in the Contract Documents, to make reasonable adjustments in the scope of the Project and to include in the Contract Documents alternate bids to adjust the Construction Cost to the fixed limit. Any such fixed limit shall be increased in the amount of any increase in the Contract Sum occurring after execution of the Contract for Construction."
Although the written contract does not specifically provide for a fixed construction cost, the parties presented conflicting testimony as to whether they had agreed upon a fixed construction cost. Donald Kahn testified that when he met with Terry concerning the contract, he discussed the overall budget of $2 million for the project, as well as the $6,000 cost per parking space. Kahn also testified that he and Terry orally agreed that the construction costs for the first phase of the project were not to exceed $1.2 million. While Kahn argues that they had an oral agreement concerning a fixed limit on construction costs, the written contract provides that such agreements would be in writing and would be signed by the parties. Kahn produced no written evidence of such an agreement.
Terry testified that he and Donald Kahn talked over the general terms and conditions of the contract, rate fees, and other considerations. Terry testified that Kahn told him that the budget for the project was tight and that Kahn mentioned the $1.2 million figure. Terry seems to argue, however, that the figure was mentioned only in terms of the budget and not as a limitation on construction costs for the project.
This Court stated in Smothers v. Henderson, 531 So.2d 657,659 (Ala. 1988):
 " 'Where the evidence is conflicting, this court will not substitute its judgment for that of the trier of facts.' Shiver v. Waites, 408 So.2d 502, 504 (Ala. 1981). . . . *Page 393 
 " 'Jury verdicts are presumed to be correct in Alabama. This presumption of correctness is further strengthened by the trial court's denial of a motion for new trial. Chapman v. Canoles, 360 So.2d 319 (Ala. 1978). The appellate court "must review the tendencies of the evidence most favorable to the prevailing party and indulge such inferences as the jury was free to draw." Cooper v. Peturis, 384 So.2d 1087, 1088
(Ala. 1980). Therefore, a judgment based on a jury verdict will not be reversed unless it is plainly and palpably wrong. Osborne v. Cobb, 410 So.2d 396 (Ala. 1982).'
"Ashbee v. Brock, 510 So.2d 214, 215 (Ala. 1987)."
Because there was a dispute as to the existence of a fixed limit on construction costs, this matter was correctly submitted to the jury. We conclude that, based on the evidence presented to the jury, it could correctly determine that there was no fixed construction cost limit set in the contract and that Terry was therefore entitled to compensation for his services.
Kahn further argues that Terry delegated his design responsibility under the contract and therefore was not entitled to compensation. Terry argues that no such delegation occurred because he retained the right to assign the responsibility under the contract. The pertinent provision of the contract authorizes Terry to, in fact, do that. Having examined the contract, we are unable to conclude that the jury erroneously found in favor of Terry on this issue.
Based on the foregoing, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.